UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                           CASE NO. 09-10646

STEPHEN JOHN BANDI                                             SECTION "B"

    DEBTOR                                                              CHAPTER 7
**************************************************************************
CHRISTOPHER BECNEL
    PLAINTIFF

VERSUS                                                                         ADV.P. NO. 09-1073

STEPHEN BANDI
    DEFENDANT

## ORDER AND REASONS

In response to the Motion to Alter or Amend Judgment, Make Additional Findings of Fact and for New Trial (P-79) filed by the debtor/defendant, Stephen Bandi, the court issues these written reasons for its judgment of April 22, 2010, which found Bandi's debt nondischargeable under 11 U.S.C. 523(a)(2)(A) but dismissed the plaintiff, Becnel's, complaint under 11 U.S.C. 523(a)(2)(B).

Bandi brings this motion pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024, which respectively incorporate Federal Rules of Civil Procedure 59 and 60. For a Rule 59(e) motion to be successful, the movant must demonstrate: "(1) that the judgment is based upon a manifest error of law or fact; (2) the existence of newly discovered or previously unavailable evidence; (3) that reconsideration is necessary to

1

prevent manifest injustice; or (4) that serious misconduct of counsel justifies relief."[1]

For a Rule 60(b) motion to be successful, the movant must:

> [D]emonstrate[] that the evidence in support of their motion to reconsider was not presented in their original motion . . . due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgement [being] void; (5) the judgment [having] been satisfied, released or discharged; or (6) any other reason justifying relief from the operation of the judgment.[2]

Regardless of whether the court treats Bandi's motion as a Rule 9023 motion or a Rule 9024 motion, Bandi has not provided this court with any justification for amending its judgment or ordering a new trial. Thus, the portion of the motion requesting relief under FRBP 9023 and 9024 is DENIED.

Bandi also moves the court to make additional findings of fact and conclusions of law under FRBP 7052, which incorporates FRCP 52. Although the court will not change its ruling in response to Bandi's argument that the court erroneously interpreted sections 523(a)(2)(A) and (B) of the Bankruptcy Code in its initial judgment, the court will make additional comments for the purpose of clarifying the record in this matter.

In the motion currently before the court, Bandi raises for the first time a legal argument with respect to the scope of the term "a statement respecting the debtor's or an insider's financial condition," found in the last clause of section 523(a)(2)(A) of the

---

[1] *Liljeberg Enterprises, Inc. v. Emmett, Cobb, Waits, and Kessenich (In re Liljeberg Enterprises, Inc.),* 1997 WL 222497 at *2 (E.D.La. May 1, 1997).

[2] *Teal v. Eagle Fleet, Inc.,* 933 F.2d 341, 347 (5th Cir. 1991)(quotation marks omitted).

Bankruptcy Code.[3] Bandi cites cases referencing a split in authority as to what constitutes a "statement respecting financial condition," citing *Caldwell v. Joelson*, 427 F.3d 700 (10th Cir. 2005); *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir. 1984); and *Armbrustmacher v. Redburn*, 202 B.R. 917 (Bankr. W.D. Mich. 1996). The three cases cited, *supra*, each embody a different approach to the question of what can be considered a "statement respecting financial condition," what Bandi calls the narrow, broad and modified/expansive view of the question. In his motion, Bandi contends that, "the Court clearly rejected the Narrow View definition of what constitutes a 'Statement Respecting Financial Condition' in its ruling of December 9, 2009." Further Bandi contends that because the court did not provide guidance at the March 17, 2010 hearing as to which of the three views was to be applied to this case, Bandi was, "left to assume that the Court could use either the Broad or the Modified/Expansive view" in the case.[4] Bandi then contends that he was unfairly prejudiced because his strategic decisions made during the

---

[3] 11 U.S.C. § 523(a)(2)(A) states:

> A discharge under section 727, 1141 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

[4] As explained more fully *infra* p.4, this was not a ruling on the merits but instead a denial of Bandi's motion for a summary judgment.

trial were guided by these assumptions.[5]

## I. Motions Heard Before the Trial

This adversary proceeding was initiated by the filing of a complaint on June 12, 2009. Bandi filed a motion to dismiss or motion for a more definite statement on September 17, 2009. The motion was granted in part, and Becnel was ordered to file an amended complaint.[6] Becnel complied with this order, and Bandi filed a second motion to dismiss on November 17, 2009. That motion was denied.[7] The matter was set for trial, and on February 24, 2010, prior to the trial, Bandi filed a motion for summary judgment, which was also denied.[8]

The court begins by reviewing the pretrial motions and arguments that were brought before the court. In neither of Bandi's motions to dismiss, and nowhere in his motion for summary judgment was there any mention of the particular legal issue he now raises. The court has specifically reviewed the transcript of the December 9, 2009 hearing along with the second motion to dismiss, which Bandi filed in connection with that hearing, and he makes no mention of this legal issue. Bandi's second motion to

---

[5] It is difficult to determine how Bandi's failure to present any evidence, or what he claims was the curtailment of his oral argument, were affected by the issue he now raises for the first time, i.e., whether the court should apply a narrow, a broad, or some other test to the words "a statement respecting financial condition." The court did not make any ruling prior to the trial that dismissed any of Becnel's claims of nondischargeability.

[6] *See* Order dated October 8, 2009 (P-29).

[7] *See* Order dated December 9, 2009 (P-38).

[8] *See* Order dated March 19, 2010 (P-69).

dismiss does contend that Becnel's amended complaint still does not adequately address the 523(a)(2)(B) complaint, but there are no cases cited and nowhere is the narrow view/broad view question of law specifically raised.

Likewise, at the March 17, 2010 hearing on Bandi's motion for summary judgment no mention was made of the split in authority regarding what constitutes a "statement respecting financial condition." Bandi's motion, heard on March 17, 2010, raised again his contention that Becnel's case should be dismissed because the complaint did not properly address the section 523(a)(2)(B) cause of action.

Although it is possible that Bandi, a non-lawyer, was inartfully attempting to raise the narrow view/broad view argument of what constitutes a "statement respecting financial condition" at these pretrial hearings, he cited no case law and made no argument that brought that specific issue squarely before the court. Thus, the court rejects Bandi's contention that it, "clearly rejected the Narrow View definition of what constitutes a 'Statement Respecting Financial Condition' in its ruling of December 9, 2009."

## II. The Trial

Becnel's complaint brought non-dischargeability claims against Bandi under §§ 523(a)(2)(A) and (B) of the Bankruptcy Code. At trial, Becnel proved that his claim against Bandi was for a loan made to RSB Companies, LLC ("RSB") in the amount of $150,000, which was evidenced by two checks, each in the amount of $75,000, dated October 21 and 24, 2005, and a signed promissory note dated October 12, 2005 that was

personally guaranteed by both Bandi and his brother Charles E. Bandi.[9] Prior to the bankruptcy filing, Becnel had obtained state court judgments against Bandi, his brother Charles, and RSB in state court.[10] Becnel's primary contentions at trial, which he proved through witness testimony, were that Bandi induced him to make this loan through false representations. Chiefly, Bandi told Becnel and others that he owned various properties around the New Orleans area that he was developing, from which he would be making a substantial profit. Becnel testified that he and Bandi had met in 2002, become close personal friends, and that he made the loan to RSB based on Bandi's personal guarantee of the loan.[11] He further testified that the personal guarantee was important because he believed Bandi owned several properties.[12] Becnel also testified that at some point prior to making the loan he had his attorney review the accounts receivable of RSB.[13]

---

[9] Trial Exhibits 3, 4, and 23. Charles Bandi filed his own Chapter 7 bankruptcy case, Case No. 09-11297. Becnel filed an adversary proceeding against Charles Bandi as well. That adversary proceeding, Case No. 09-1100, was consolidated for trial with this case. After the judgment was entered, however, Charles Bandi retained an attorney and is currently pursuing an appeal of the judgment in the adversary proceeding against him. Thus, this "Order and Reasons" applies only to Stephen Bandi's adversary proceeding, Case No. 09-1073.

[10] A copy of the state court judgment against Stephen was attached to the amended complaint (P-17, attachment 2). That judgment was not entered into evidence at the trial.

[11] In 2005 the Bandi family lived with the Becnels for a period of time after Hurricane Katrina.

[12] Becnel testified that he believed Bandi owned a house on Camp Street, a condominium development on Algiers Point, and an office building on North Causeway Boulevard. Mrs. Becnel testified to the same effect and added that Bandi showed them the plans for renovating the house on Camp Street, the plans for redoing the condos in Algiers and had described what a great buy he had gotten on the North Causeway property.

[13] Trial Exhibit 1.

Bandi's argument, which the court had not considered prior to this motion, is that all of the evidence presented by Becnel shows that Becnel relied on information related to Bandi's financial condition, and therefore, falls under § 523(a)(2)(B), and not § 523(a)(2)(A). Thus, Bandi argues, Becnel failed to prove his case, because most of those representations were oral, and as such do not fall within the ambit of § 523(a)(2)(B), which only applies to statements in writing.[14]

### III. The strict vs. broad interpretation of a statement "respecting the debtor's ... financial condition.

To properly address Bandi's argument the court will set forth in writing which of the competing approaches to the interpretation of a statement "respecting the debtor's ... financial condition" this court will follow. This issue has not been decided by the court in any of its prior cases. As stated above, there is a split in authority among the various bankruptcy and Circuit Courts of Appeal on this issue. The United States Fifth Circuit Court of Appeal has not addressed this issue; thus, this court is free to rule on this issue as a matter of first impression.

After reviewing the case law addressing this issue, the court finds the approach of

---

[14] 11 U.S.C. § 523(a)(2)(B) excepts from discharge, any debt-

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by use of a statement in writing
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

the Tenth Circuit Court of Appeal in *Cadwell v. Joelson*, 427 F.3d 700 (10th Cir. 2005) to be the most persuasive. *Joelson* outlines the problem as follows:

> The phrase 'respecting the debtor's ... financial condition' has a range of potential meaning. Under what many of the courts who have considered this issue refer to as the 'broad interpretation,' a statement 'respecting the debtor's ... financial condition' is any communication that has a bearing on the debtor's financial position. Thus, the broad interpretation posits that a communication addressing the status of a single asset or liability qualifies as 'respecting the debtor's ... financial condition.' Under what courts refer to as the 'strict interpretation,' a statement 'respecting the debtor's ... financial condition' is any communication that presents an overall picture of the debtor's financial position. This interpretation limits statements 'respecting the debtor's ... financial condition' to communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities.[15]

*Joelson* goes on to note that because of the text of §§ 523(a)(2)(A) and (B), the court's interpretation of the phrase "'respecting the debtor's ... financial condition' will have opposing impacts on debtors and creditors under each of the sections."[16] Under the statute, oral and written statements are treated differently. If the court takes a strict view of a statement "respecting the debtor's ... financial condition," the scope of oral statements that fall within the ambit of non-dischargeability under § 523(a)(2)(A) is greatly expanded.

Although, ordinarily, exceptions to discharge under § 523 of the Bankruptcy Code are to be strictly construed against the creditor and in favor of the debtor,[17] the court notes

---

[15] *Joelson,* 427 F.3d at 705 (internal citations omitted).

[16] *Id.* at 707.

[17] *In re Boyle,* 819 F.2d 583 (5th Cir. 1987).

8

that the Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'"[18] *Joelson* contains a lengthy discussion of the legislative history of §§ 523(a)(2)(A) and (B), which it is not necessary to repeat here other than to state that this court agrees with *Joelson* that the legislative history supports the strict interpretation of a statement "respecting the debtor's ... financial condition" as pertaining to the overall financial condition of the debtor.[19] As stated by *Joelson*, this includes:

> Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor's or insider's net worth, overall financial health, or equation of assets and liabilities. However, such statements need not carry the formality of a balance sheet, income statement, statements of changes in overall financial position, or income and debt statement. What is important is not the formality of the statement, but the information contained within it - information as to the debtor's or insider's overall net worth or overall income flow.[20]

To hold otherwise would be to allow the debtor who had committed fraud by oral, rather than written, representations, a loophole large enough to drive a truck through. Effectively sanctioning fraud because the debtor made oral, rather than written, misrepresentation would foreclose § 523(a)(2)(A) as a remedy for many of the creditors that come through this court. This would not be consistent with either Congress's intent

---

[18] *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755(1991).

[19] *Joelson* at 708-09.

[20] *Joelson* at 714.

as expressed in the legislative history or the purpose of the Bankruptcy Code.

The court notes that by choosing the strict interpretation of a statement "respecting the debtor's ... financial condition," the court does not alter the fact that the party seeking to have a debt declared non-dischargeable still bears the burden of proof in these cases. As shown in the following section, non-dischargeability, whether based on false pretenses, a false representation or actual fraud is not particularly easy to prove, so the plaintiff in a § 523(a)(2)(A) case still has a hard road ahead of him before a debt is declared non-dischargeable.

### IV. Section 523(a)(2)(A).

"Debts falling within section 523(a)(2)(A) are debts obtained by frauds involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made."[21]

The Fifth Circuit has held that to prove a claim under Section 523(a)(2)(A), the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) that the creditor sustained losses as a proximate result of the representations.[22]

---

[21] *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992), *citing Matter of Foreman,* 906 F.2d 123, 127 (5th Cir. 1990).

[22] *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005), *citing*, *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001).

Fraud can be based on any type of conduct calculated to convey a misleading impression; thus, it is not relevant whether the representation is express or implied.[23] A finding of fraud does not require an affirmative statement and may be predicated on a failure to disclose a material fact.[24] Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A).[25]

With respect to the third element for actual fraud, an intent to deceive can be inferred from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation."[26] However, if the debtor made a representation that was based on a justifiably honest belief that it was true, that does not rise to the level of an intent to deceive.[27]

Section 523(a)(2)(A) requires justifiable, not reasonable reliance.[28] As opposed to the objective reasonable man, justification is a subjective inquiry, depending on the

---

[23] *In re Acosta*, 2003 WL 23109775 at *13 n.166 (E.D.La. 2003), *citing*, *In re Wyant*, 236 B.R. 684, 695 (Bankr. D. Minn. 1999).

[24] *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997).

[25] *In re Acosta*, 2003 WL 23109775 at *13, *citing*, *In re Docteroff*, 133 F.3d at 216; *In re Wyant*, 236 B.R. at 695.

[26] *In re Acosta*, 406 F.3d at 372, *citing In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995).

[27] *.In re Acosta*, 406 F.3d at 372, *citing*, *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997).

[28] *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), *citing*, *In re Vann*, 67 F.3d 277 (11th Cir. 1995).

particular plaintiff and the particular circumstances.[29] Justifiable reliance is gauged by an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.[30] It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.[31] Section 523(a)(2)(A) prevents the discharge of all liability arising from a debtor's fraudulent conduct, including attorney's fees, costs, and interest.[32]

Using the strict interpretation of a statement "respecting the debtor's ... financial condition," and applying it to the case before the court, the court finds that the plaintiff did prove his case as to the 523(a)(2)(A) count of the complaint. At trial the plaintiff introduced the testimony of four witnesses into evidence. The cumulative weight of the testimony of these witnesses shows that the debtor induced the plaintiff to lend money to RSB based on false representations and/or false pretenses. Specifically, the witnesses testified that the debtor claimed to own several properties around New Orleans when in fact he did not own them. The debtor chose not to introduce any countervailing evidence

---

[29] *Field*, 516 U.S. at 70-71.

[30] *In re Vann*, 67 F.3d at 281.

[31] *Id.*

[32] *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

12

to rebut the testimony of these witnesses. Instead, the debtor relied on his closing argument, where he made numerous statements that could not be given evidentiary weight. Had the debtor and/or his brother taken the witness stand under oath and attempted to counter the plaintiff's testimony or the testimony of the other witnesses, perhaps the court would have ruled differently. The debtor chose to close his case without presenting any evidence to counter the plaintiff's proof. As the court explained to the debtor at the trial, however, the court cannot take the statements made by the debtor in his closing argument as evidence.

The court holds that although the plaintiff proved his case under the § 523(a)(2)(A) countof the complaint, he did not prove his case as to the 523(a)(2)(B) count of the complaint. Although evidence was introduced at trial to prove that Bandi provided Becnel with written accounts receivable statements, under the strict interpretation of a statement "respecting the debtor's ... financial condition," which the court has decided to adopt, a list of accounts receivable, by itself, is not a financial statement that gives a picture of the debtor's overall financial condition such that it would qualify as a statement "respecting the debtor's ... financial condition" for purposes of § 523(a)(2)(B).

## V. Conclusion

For the reasons stated above, the court holds that Bandi's Motion to Alter or Amend Judgment, Make Additional Findings of Fact and for New Trial is DENIED. The Judgment of April 22, 2010 is the final judgment of this court.

New Orleans, Louisiana, July 13, 2010.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge